Filed 12/22/23  P. v. Alves CA2/4

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>　　v.<br><br>ROBERT ALVES,<br><br>　　Defendant and Appellant. | B325710<br><br>Los Angeles County<br>Super. Ct. No. BA102783 |

APPEAL from an order of the Superior Court of Los Angeles County, Craig E. Veals. Affirmed.

Sally Patrone, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Noah P. Hill and Stephanie A. Miyoshi, Deputy Attorneys General, for Plaintiff and Respondent.

# INTRODUCTION

In 1997, a jury convicted defendant and appellant Robert Alves of first degree murder and conspiracy to commit murder. The trial court sentenced him to concurrent terms of life without the possibility of parole. In 2019, Alves filed a petition for recall and resentencing under former Penal Code section 1170.95.[1] The trial court denied relief, and a different panel of this court affirmed the trial court's ruling in *People v. Alves* (July 27, 2020, B298708) [nonpub. opn.] (*Alves II*).[2]

In 2022, Alves filed a second resentencing petition under section 1172.6. In summarily denying relief, the trial court explained that Alves had previously filed a petition which was denied, and that "the denial stands."

On appeal, Alves raises various arguments asserting the trial court prejudicially erred and remand is warranted. We are unpersuaded. Because the record demonstrates Alves is ineligible for section 1172.6 relief as a matter of law, we affirm the trial court's order denying relief.

---

1 All undesignated statutory references are to the Penal Code. Effective June 30, 2022, the Legislature renumbered section 1170.95 to section 1172.6 without making substantive changes. (Stats. 2022, ch. 58, § 10.)

2 We granted Alves's request for judicial notice of this court's opinion in *Alves II*. We likewise granted the Attorney General's request for judicial notice of the record in that case. We also granted Alves's request for judicial notice of our opinion resolving his direct appeal in *People v. Alves* (Nov. 11, 1998, B115617) [nonpub. opn.] (*Alves I*).

## PROCEDURAL BACKGROUND

The procedural background of this case is described as follows in this court's opinion in *Alves II*.

"The Los Angeles County District Attorney filed an information charging Alves and codefendant Anna Dominguez with first degree murder (§ 187, subd. (a); count one) and conspiracy to commit murder (§ 182, subd. (a)(1); count two).[3] The information alleged Alves and Dominguez personally used a firearm in the commission of count one (§ 12022.5, subd. (a)(1)). The information also alleged two special circumstances on count one: (1) lying in wait (§ 190.2, subd. (a)(15)); and (2) the murder was committed for financial gain (§ 190.2, subd. (a)(1)). With respect to the conspiracy charge, the information alleged three overt acts — the defendants or coconspirators: (1) obtained a handgun; (2) drove to the scene; and (3) shot and killed victim Frank Villareal.

"On March 13, 1997, a jury convicted Alves of first degree murder, found not true the allegation that he personally used a firearm, and found true the two special circumstance allegations. The jury convicted Alves of conspiracy to commit murder, found not true the allegation that he personally used a firearm, and found the three alleged overt acts true. The trial court sentenced Alves to life in prison without the possibility of parole on count one, and a concurrent term of life without the possibility of parole on count two. In an opinion filed November 19, 1999, this court, in case no. B115617, ordered each defendant's concurrent sentence on count two stayed under section 654, and affirmed the

---

3       A third defendant, Ricardo B., was found guilty of murder in a juvenile court proceeding.

3

convictions of both defendants in all other respects." (*Alves II*, *supra*, B298708.)

In 2019, Alves filed a petition for resentencing under former section 1170.95, which the trial court denied. In 2020, a different panel of this court affirmed the trial court's order denying relief.

Two years later, Alves filed a second petition for resentencing, requesting that counsel be appointed on his behalf. Without appointing counsel, the trial court summarily denied the petition, noting it had already denied relief on Alves's previous petition. Alves timely appealed.

## FACTUAL BACKGROUND[4]

"In the early morning hours of December 20, 1991, Frank Villareal was murdered while he slept in his bed. The assailants stood outside of his house and, through an open window, shot Villareal three times in the head. Three individuals were prosecuted for the murder: the victim's wife, Anna Dominguez, her lover, Robert Alves, and a third individual, Ricardo B., who was 15 years old at the time and subject to proceedings in juvenile court.

"Before the murder, Alves was incarcerated with Daniel Dominguez ('Daniel'), the brother of codefendant Anna Dominguez ('Anna'). Anna wrote to her brother that her husband,

---

4    The following information is taken from the facts section of this court's opinion resolving Alves's first resentencing petition, which is a modified version of the facts from this court's opinion resolving Alves's direct appeal. We include this information solely to provide background and context for the parties' arguments, and do not rely on it to resolve this appeal. (See *People v. Delgadillo* (2022) 14 Cal.5th 216, 222, fn. 2.)

4

Villareal, was physically abusing her. Daniel told Alves about the abuse and, in anger, suggested something should be done to Villareal. Alves volunteered to handle the matter and began corresponding with Anna. After Alves was released, he and several others drove to Anna's house, where she told Alves and Ricardo B. she would pay them to 'take care of' Villareal.

"Later, Villareal returned home. Alves hid in the backyard with a companion and then rejoined the others who had traveled with him to Anna's house. Alves and Ricardo B. returned to the house. Alves had a handgun and Ricardo B. had a baseball bat. When they returned to the car, they told the group they had removed the window screen in the bedroom, inserted the gun, and shot Villareal. The next day, Alves returned to Anna's house, and she handed him something, possibly money. Within days, Anna completed a Department of Motor Vehicles form transferring a one-half interest in her car to Alves. When the police first investigated the murder, Anna identified several possible suspects besides herself and Alves, including the Mexican Mafia and people who had previously fought with her husband.

"Alves violated parole and returned to state prison. Once back, he told Daniel he had murdered Villareal by shooting him three times in the back of the head. Daniel was surprised Alves had carried through on his threat to kill Villareal. In August 1994, after both Daniel and Alves had been released from prison, Daniel telephoned Villareal's mother and told her Alves and Anna had murdered her son. Villareal's mother contacted the police, who opened an investigation. As a result, criminal proceedings ensued against Alves and Anna, as well as juvenile proceedings against Ricardo B." (*Alves II*, *supra*, B298708.)

## DISCUSSION

### I. Governing Law

The Legislature enacted Senate Bill 1437 (2017-2018 Reg. Sess.) (SB 1437) "to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f); accord, § 189, subd. (e); *People v. Lewis* (2021) 11 Cal.5th 952, 959 (*Lewis*).)

SB 1437 also added section 1170.95 to the Penal Code which, as mentioned above, was later renumbered to section 1172.6. (Stats. 2018, ch. 1015, § 4; Stats. 2022, ch. 58, § 10.) This section permits individuals who were convicted of felony murder or murder under the natural and probable consequences doctrine, but who could not be convicted of murder following SB 1437's changes to sections 188 and 189, to petition the sentencing court to vacate the conviction and resentence on any remaining counts. (§ 1172.6, subd. (a).) It also provides relief for certain individuals convicted under any "other theory under which malice is imputed to a person based solely on that person's participation in a crime." (*Ibid.*)

A petition for relief under section 1172.6 must include a declaration by the petitioner that he or she is eligible for relief based on all the requirements of subdivision (a), the superior court case number and year of the petitioner's conviction, and a request for appointment of counsel, should the petitioner seek appointment. (§ 1172.6, subd. (b)(1).)

6

Subdivision (c) of section 1172.6 provides: "Within 60 days after service of a petition that meets the requirements set forth in subdivision (b), the prosecutor shall file and serve a response. The petitioner may file and serve a reply within 30 days after the prosecutor's response is served. These deadlines shall be extended for good cause. After the parties have had an opportunity to submit briefings, the court shall hold a hearing to determine whether the petitioner has made a prima facie case for relief. If the petitioner makes a prima facie showing that the petitioner is entitled to relief, the court shall issue an order to show cause. If the court declines to make an order to show cause, it shall provide a statement fully setting forth its reasons for doing so."

If the trial court determines the petitioner has made a prima facie showing for relief and issues an order to show cause, the court must hold a hearing "to determine whether to vacate the murder . . . conviction and to recall the sentence and resentence the petitioner on any remaining counts in the same manner as if the petitioner had not previously been sentenced, provided that the new sentence, if any, is not greater than the initial sentence." (§ 1172.6, subd. (d)(1).) At the hearing, the parties may rely on the record of conviction or present "new or additional evidence" to support their positions, and "the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (d)(3).)

## II. Analysis

### a. The record demonstrates Alves is ineligible for relief as a matter of law

We granted Alves's request for judicial notice of the jury instructions and verdict forms from his trial. As the Attorney General correctly asserts, a review of those portions of the record demonstrates as a matter of law Alves is ineligible for section 1172.6 relief.

We begin by noting that, with respect to Alves's murder count, the jury was not instructed on felony murder, the natural and probable consequences doctrine, nor aider and abettor liability. Alves thus attempts to argue other instructions given at his trial allowed for the possibility that the jury convicted him of murder without finding he harbored the intent to kill. Alves's argument is unavailing. As noted above, in addition to finding Alves guilty of murdering Villareal, the jury also found him guilty of conspiracy to commit murder. On that count, the trial court instructed the jury using CALJIC No. 8.69. That instruction told the jury that a conspiracy to commit murder required "the specific intent to agree to commit the crime of murder and with the further specific intent to commit that murder." The instruction further explained one of the elements of the offense was that "[e]ach of the persons to the agreement harbored express malice aforethought, namely a specific intent to kill unlawfully another human being[.]" It also reminded the jury that "[m]urder is the unlawful killing of a human being with malice aforethought." And the only kind of malice aforethought that was defined for the jury was express malice – the court instructed the jury using CALJIC No. 8.11 and crossed out the definition of implied malice. In light of the instructions given, the

8

jury's guilty verdict on Alves's conspiracy to commit murder count demonstrates the jurors concluded he harbored the intent to kill.[5] And as mentioned above, the record reveals the jury was not instructed on the felony murder rule, natural and probable consequences doctrine, or aider and abettor liability on his murder count. Viewing the jury instructions and verdicts as a whole, it is clear Alves is ineligible for section 1172.6 relief as a matter of law.

Contrary to Alves's contention, the trial court's use of CALJIC No. 6.11 does not change the foregoing conclusion. CALJIC No. 6.11, as given to the jury, stated: "Each member of a criminal conspiracy is liable for each act and bound by each declaration of every other member of the conspiracy if such act or such declaration is in furtherance of the object of the conspiracy. [¶] The act of one conspirator pursuant to or in furtherance of the common design of the conspiracy is the act of all conspirators." Although Alves argues this instruction allowed the jury to convict him of conspiracy to commit murder even if he did not personally harbor the intent to kill, that is not the case. The instruction does not mention intent, but instead refers only to acts and declarations. And the other instructions, which did discuss intent, explicitly explained to the jury that the intent finding necessary to convict Alves of conspiracy to commit murder was the express intent to kill. Thus, there is no reasonable likelihood that CALJIC No. 6.11 would have been interpreted by the jury as

_____

5  For this reason, we find unavailing Alves's reliance on *People v. Maldonado* (2023) 87 Cal.App.5th 1257 and *People v. Langi* (2022) 73 Cal.App.5th 972 in asserting remand is warranted. Unlike Alves's case, those cases did not involve convictions for conspiracy to commit murder, and thus did not entail an explicit jury finding of express malice.

9

having anything to do with the intent necessary for a conspiracy to commit murder, nor would the jurors interpret the instructions as stating Alves could be liable for conspiracy even if he did not have the intent to kill. (See *People v. Ocegueda* (2023) 92 Cal.App.5th 548, 557 (*Ocegueda*) [challenged instructions are viewed in context of instructions as a whole and trial record to determine whether there is a reasonable likelihood the jurors applied the challenged instructions in an impermissible manner].)

We likewise reject Alves's argument that CALJIC No. 6.23, which listed the alleged overt acts, indicated to the jury that Alves could be convicted of conspiracy to commit murder without having an intent to kill. Specifically, Alves argues because the instructions stated "defendants and others" committed the overt acts, the instruction could be interpreted to allow a conspiracy conviction without an intent to commit murder, leaving open the possibility that he was convicted under a theory of imputed malice. But CALJIC No. 6.23 did not state the elements or intent needed for conspiracy to commit murder; it only listed the alleged overt acts. As discussed above, CALJIC No. 8.69, the instruction on conspiracy to commit murder, repeatedly stated one of the elements of the offense was the specific intent to kill. Other instructions reiterated this point. For example, CALJIC No. 3.31.5 explained: "In the crime of conspiracy to commit murder, the necessary mental state is a specific intent to kill." The record thus clearly demonstrates the jury concluded Alves harbored the intent to kill. And, as mentioned above, the record demonstrates that the jury was not instructed on felony murder, the natural and probable consequences doctrine, nor aiding and abetting.

Though the above analysis is sufficient to conclude Alves is ineligible for section 1172.6 relief as a matter of law, we note that other jury findings likewise support the conclusion that Alves is ineligible for relief as a matter of law. As mentioned above, the jury found true the special circumstance allegations that the murder was (1) committed while Alves or a co-conspirator was lying in wait; and (2) committed for financial gain. These findings also establish the jury found Alves harbored the intent to kill.

Unlike a theory of murder based on lying in wait, the special circumstance of lying in wait requires that "[t]he defendant intentionally killed the victim by means of lying in wait." (§ 190.2, subd. (a)(15); see *People v. Johnson* (2016) 62 Cal.4th 600, 629 [lying in wait special circumstance requires an intentional murder committed under circumstances in which there is a concealment of purpose, a substantial period of waiting and watching for an opportunity to act, and a surprise attack on an unsuspecting victim]; *People v. Cage* (2015) 62 Cal.4th 256, 278 [whereas lying-in-wait murder requires only a wanton and reckless intent to inflict injury likely to cause death, lying-in-wait special circumstance requires intent to kill].)[6]

The financial gain special circumstance also requires an intentional murder. (§ 190.2, subd. (a)(1) ['The murder was intentional and carried out for financial gain"].) "Even if the defendant is 'not the actual killer,' if that defendant 'with the intent to kill, aids, abets, counsels, commands, induces, solicits, requests, or assists any actor in the commission of murder in the

---

6       As a separate matter, we note that, with respect to Alves's murder count, the jury was instructed on two different theories of liability: (1) premeditated and deliberate first degree murder; and (2) first degree murder under a theory of lying in wait.

11

first degree,' he or she is also subject to this special circumstance." (*People v. Fayed* (2020) 9 Cal.5th 147, 201-202, citing § 190.2, subd. (c).)

The instructions on the special circumstance allegations made clear that the intent to kill was required for a true finding on either special circumstance. CALJIC No. 8.80.1 emphasized: "If you find that a defendant was not the actual killer of a human being, or if you are unable to decide whether the defendant was the actual killer or co-conspirator, you cannot find the special circumstance to be true as to that defendant unless you are satisfied beyond a reasonable doubt that such defendant with the intent to kill aided, abetted, solicited, or assisted any actor in the commission of the murder in the first degree." For both special circumstances, the jury was also told that the special circumstance allegations could not be found true "unless the proved surrounding circumstances are not only" "consistent with the theory that the defendant had the required specific intent," but "cannot be reconciled with any other rational conclusion." Thus, the instructions ensured that the jury found Alves had the specific intent to kill before finding the special circumstances true.[7]

---

7    Alves once again contends CALJIC No. 6.11 could have led the jury to assume that the intent to kill could be imputed to a defendant who was not the actual killer. However, CALJIC No. 6.11 did not apply to the special circumstances allegations or even the crime of murder, but instead applied to the conspiracy count. Thus, there was no likelihood the jury would have found the special circumstance allegations true by imputing malice to Alves based on CALJIC No. 6.11. (See *Ocegueda, supra*, 92 Cal.App.5th at p. 557.)

12

In short, Alves is ineligible for relief as a matter of law because (1) the jury was not instructed on felony murder, the natural and probable consequences doctrine, or aiding and abetting; and (2) any reasonable juror would have interpreted the instructions as requiring a finding of express intent to kill on the conspiracy to commit murder count and special circumstance findings (see *Ocegueda*, *supra*, 92 Cal.App.5th at p. 557).

The Supreme Court's recent decision in *People v. Curiel* (Nov. 27, 2023, S272238) __ Cal.5th __ (*Curiel*) does not change our analysis. A jury convicted Curiel of first degree murder and found true a gang-murder special circumstance allegation under section 190.2, subdivision (a)(22). (*Curiel*, *supra,* __ Cal.5th __.) The jury's special circumstance finding included a finding that Curiel harbored the intent to kill. (*Ibid.*) During closing arguments, however, the prosecution argued to the jury that Curiel was guilty of murder under two different theories – (1) as an aider and abettor (acting with express and implied malice); and (2) under the natural and probable consequences doctrine. (*Ibid.*) Under the very specific circumstances of Curiel's case (discussed in greater detail in the following paragraph), the Supreme Court held the jury's finding of intent to kill, standing alone, did not necessarily establish Curiel was ineligible for section 1172.6 relief as a matter of law. (*Ibid.*) In reaching this conclusion, *Curiel* noted its holding involved a scenario that is "'quite narrow' and relevant only to a 'very small set of cases.'" (*Ibid.*)

The basis for the Supreme Court's holding was as follows: "Because the jury was instructed on the natural and probable consequences doctrine, the jury was required to find only that Curiel knew that [the actual killer, Abraham] Hernandez

13

intended to commit one of the [two] underlying target offenses [i.e., disturbing the peace or carrying a concealed firearm by a gang member] and that Curiel intended to aid him in *that* offense, not murder. Nor was the jury required to find that the underlying target offenses, themselves, were dangerous to human life. While the jury separately found Curiel intended to kill, such an intent standing alone is insufficient to establish the requisite mens rea for aiding and abetting murder." (*Curiel, supra,* __ Cal.5th __, original italics.)

  *Curiel* is thus different from Alves's case. Whereas the jury in *Curiel* was instructed on the natural and probable consequences doctrine as well as aider and abettor liability, Alves's jury was not. And here, the record reveals the jury, in addition to convicting Alves of murder, found Alves expressly harbored the intent to kill, and formed a conspiracy to commit murder, resulting in the victim's murder. Alves's case is also different from *Curiel* in another crucial respect. Here, unlike in *Curiel*, as discussed above, the jury found financial gain and lying in wait special circumstance true. As noted above, the jury instructions on the special circumstances, given at Alves's trial, explained: "If you find that a defendant was not the actual killer of a human being, or if you are unable to decide whether the defendant was the actual killer or co-conspirator, you cannot find the special circumstance to be true as to that defendant unless you are satisfied beyond a reasonable doubt that such defendant with the intent to kill aided, abetted, solicited, or assisted any actor in the commission of the murder in the first degree." For these reasons, *Curiel* does not alter our conclusion that Alves is ineligible for relief as a matter of law.

14

### b. Because Alves is ineligible for relief as a matter of law, his other arguments that remand is warranted are unavailing

#### 1. Alves's collateral estoppel and law of the case arguments

Alves argues the trial court prejudicially erred by denying him relief under collateral estoppel principles or the law of the case doctrine. Because the record demonstrates Alves is ineligible for relief as a matter of law for the reasons described above, any purported error in denying him relief based on collateral estoppel or law of the case doctrine was harmless. Consequently, to the extent the trial court's ruling suggests it denied Alves relief under principles such as collateral estoppel or the law of the case doctrine, we need not decide whether the denial of relief on these grounds was erroneous.

#### 2. Alves's argument that the trial court prejudicially erred by not appointing counsel

As discussed above, Alves is ineligible for section 1172.6 relief as a matter of law. Consequently, although the trial court erred by not appointing counsel (see § 1172.6, subd. (b)(3); *Lewis*, *supra*, 11 Cal.5th at p. 957), that error was harmless. (*People v. Mancilla* (2021) 67 Cal.App.5th 854, 864.)

### c. Alves's argument concerning the gun allegation finding

Alves lastly notes that the trial court's denial of his first resentencing petition incorrectly stated the jury found true the allegation that he personally used a gun in the commission of the

murder. Indeed, we noted in our opinion affirming the denial of Alves's first resentencing petition that the court's statement was incorrect, as the jury found this personal use allegation not true. (*Alves II*, *supra*, B298708.) Alves asks that we direct the trial court to correct this error in its March 12, 2019 minute order. He also argues remand is warranted because the trial court's mistaken conclusion that the jury found the gun use allegation true was prejudicial error.

We reject Alves's argument that the trial court's mistake was prejudicial error because, as discussed above, the record demonstrates as a matter of law that Alves is ineligible for relief. We see no reason, however, to deny Alves's request that the record be corrected. We therefore direct the trial court to correct the minute order dated March 12, 2019, to reflect that the jury found the firearm allegation not true.

## DISPOSITION

The order denying Alves section 1172.6 relief is affirmed. Upon issuance of the remittitur, the trial court is instructed to correct the technical error in the record in its minute order dated March 12, 2019, to clarify that the jury found the firearm allegation not true.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

CURREY, P. J.

We concur:

COLLINS, J.

ZUKIN, J.

17